UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
FARRAH GOMEZ,

                       Plaintiff,

       - against -

COMMISSIONER OF SOCIAL
SECURITY[1],

                      Defendant.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

22-cv-6034 (BMC)

**COGAN**, District Judge.

    1.      Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge ("ALJ"), that she is not disabled as defined under the Social Security Act for purposes of receiving Supplemental Security Income under Title XVI of the Act. The ALJ found that plaintiff had severe impairments of depression, anxiety, and PTSD, but that she had sufficient residual functional capacity ("RFC") to perform a full range of work at all levels limited to simple, routine, and repetitive tasks that can be explained; making simple decisions; only occasional changes in her routine; and occasional and superficial contact with others. Because a vocational expert testified that there were jobs in the national economy meeting those criteria, the ALJ found her not disabled.

    2.      Plaintiff's primary point of error is that the ALJ improperly found the medical source statements of plaintiff's two treating mental health professionals, psychologist Dr. Alma Schwalbenberg, and psychiatrist Dr. Leonardo Vando, to be "unpersuasive." She claims that this

---

[1] The Clerk of Court is directed to amend the caption of the case on the docket sheet to conform with this caption in this Order.

characterization led to error both in the ALJ's evaluation of whether plaintiff met the listings (i.e., the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1) and the assessment of her RFC.

3. Those two opinions certainly pointed toward a finding of disability. Dr. Schwalbenberg opined that plaintiff had a marked or extreme loss in her ability to remember locations and work procedures; understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods (2 hours); sustain an ordinary routine without special supervision; deal with the stress of skilled and semi-skilled work; complete a normal workday or workweek without interruptions from her mental impairments; perform at a consistent pace without an unreasonable number of rest periods; ask simple questions or request assistance; travel in unfamiliar places; and use public transportation. She also thought that plaintiff had moderate restrictions on her activities of daily living; extreme difficulties in social functioning; constant deficiencies in concentration, persistence, or pace; and continual episodes of deterioration or decompensation in work or work-like settings. Finally, Dr. Schwalbenberg thought plaintiff would be absent from work more than 3 times per month.

4. Dr. Vando similarly opined that plaintiff had, among other things, poor memory, recurrent panic attacks, anhedonia, paranoia, difficulty thinking or concentrating, suicidal ideation and attempts as she entered her teens, social withdrawal, isolation, decreased energy, obsessions or compulsions, and intrusive recollections of her past trauma. He prescribed Prozac and listed its side effects of fatigue, memory, and attention-concentration issues. Finally, Dr. Vando thought that as a result of her impairments or treatments, plaintiff would be absent from work more than 3 times per month. His evaluation of plaintiff's specific functionality paralleled that of Dr. Schwalbenberg, *i.e.*, very limited.

5. The ALJ rejected both of these opinions for similar reasons. As to Dr. Schwalbenberg, he found that her opinion -- particularly about a marked limitation in understanding, remembering or applying information, and constant deficiencies in concentrating, persisting, or maintaining pace – was "generally not supported by her notes, which reflect little to no limitations in understanding, remembering, or applying information or concentrating, persisting, or maintaining pace." The ALJ also found that her opinion of a moderate restriction in activities of daily living and extreme loss in her ability to travel to unfamiliar places was belied by "evidence in the record showing that she socializes with her fiancé, his family, her children, and her grandmother."

6. Plaintiff's summary of the medical records in an effort to undermine the ALJ's conclusions does not succeed. First of all, most of the treatment notes to which plaintiff has cited me do not appear to have been taken by Dr. Schwalbenberg; they were taken by a Licensed Clinical Social Worker named Cecelia Branas or someone else named Denise Wynter with no title, whose names are not even mentioned in plaintiff's briefs. There is no indication that Dr. Schwalbenberg was present at a single session that gave rise to these treatment notes.

7. Even if I attribute those treatment notes to Dr. Schwalbenberg, they provide little support for the extreme conclusions in her medical source statement. Plaintiff went to therapy to discuss her various domestic relations problems. No doubt, those problems had an outsize impact on plaintiff. She was in a depressed state, but as Ms. Branas stated, the cathartic value of the therapy sessions was to afford plaintiff an opportunity to discuss and work through her problems. According to the therapy treatment notes plaintiff cites, she didn't manifest any of the extreme mental limitations that Dr. Schwalbenberg ascribed to her.

8. Plaintiff does include a few citations to Dr. Schwalbenberg's own treatment notes, but, again, they show more complaints about daily domestic pressures. The notes are often informal, not on the doctor's letterhead (as treatment notes usually are). Occasionally, the notes report some advice that Dr. Schwalbenberg gave plaintiff, but nowhere do they suggest anything more than that plaintiff has depression and anxiety, which is not disputed. Beyond that, the very brief treatment notes simply report what plaintiff said to Dr. Schwalbenberg. There are very few conclusions drawn in them, and certainly nothing suggestive of the severe limitations contained in Dr. Schwalbenberg's medical source statements.

9. The ALJ also found the opinions internally inconsistent. For example, how could Dr. Schwalbenberg conclude that plaintiff had "extreme limitations" in social functioning and her ability to function in a work setting, yet – in the same medical source statement – also conclude that she had "no" or "mild" inability to understand and carry out short, simple, instructions, interact appropriately with the public, get along with coworkers, maintain socially appropriate behavior, and had only a moderate impairment in accepting instructions and responding appropriately to criticism from supervisors?

10. There is also the rather telling statement she made to her therapist Ms. Branas fairly early in her therapy that "she does not ha[ve] a job and she is not ready to return to work because her major concern at this time is to have enough family quality time with her children." Indeed, it seems not insignificant that plaintiff reported her anxiety started to occur after her daughter was born. This fact is not dealt with anywhere in the two above-referenced doctors' medical source statements.

11. Beyond these two doctors' statements, the ALJ identified other reasons in the record to find them unpersuasive. There were two additional medical opinions, one by a

4

consulting psychologist, Dr. Laura Kerenyi, who examined plaintiff, and a medical consultant, Dr. M. D'Ortona, who reviewed plaintiff's records. Dr. Kerenyi's opinion was largely benign, finding at most minimal impairment in mental functioning. The ALJ found this opinion consistent with her examination, but nevertheless also found it unpersuasive because the rest of the medical record showed that plaintiff had at least some moderate limits in mental functioning. Dr. D'Otorna's opinion was that plaintiff had mild limitations in some areas and moderate limitations in others. The ALJ found this opinion generally persuasive but still believed that the record supported moderate limitation in all areas of mental functioning.

12. Plaintiff's complaint seems to be that the ALJ had to pick one of the medical opinions and couldn't reach his conclusion if that conclusions didn't replicate any of the medical opinions. As discussed above, the competing opinions were that Drs. Schwalbenberg and Vando saw severe or extreme limitations whereas Drs. Kerenyi and D'Ortona found mostly mild with an occasional moderate limitation. The ALJ came out closest to Dr. D'Ortona's opinion but found plaintiff moderately impaired in all areas of mental functioning instead of moderately impaired in just one. Plaintiff argues that if the ALJ wanted to do that, he had to explain why, rather than just stating, as part of his discussion of Dr. D'Ortona's opinion, that "the record supports moderate limitations in all areas of mental functioning."

13. Plaintiff is ignoring the context of the ALJ's statement. It appears right in the middle of his discussion of the administrative record, in which he explained each of plaintiff's abilities and limitations by reference to all of the medical evidence and, indeed, to plaintiff's own statements. The ALJ ticked through every detail of the record, and it was clear that although he didn't accept any of the medical opinions completely, he saw enough evidence of a moderate impairment in every functional area to reach his conclusion. This is how an ALJ is supposed to

5

balance the record. He does not have to accept a medical opinion in totality, but can pick and choose which portions of opinions he finds persuasive even if, overall, he finds the opinion unpersuasive, and vice versa. It is not the purpose of a district court review proceeding to second guess the ALJ. Indeed, the analytical approach that the ALJ used here is virtually the same process that the Second Circuit approved in Pellam v. Astrue, 508 F. App'x 87, 89-90 (2d Cir. 2013), where the ALJ came close to but did not fully accept a doctor's opinion based on the record.

14. In short, the ALJ was not only within his discretion in finding Dr. Schwalbenberg's evaluation unpersuasive, but he was very likely quite right. And the same is true as to Dr. Vando. Both of these evaluations were pretty much out of left field.

15. Relatedly, plaintiff contends that the ALJ erred by not considering that Drs. Schwalbenberg and Vando opined that plaintiff would miss more than three days of work per month. She argues that the ALJ had to expressly decide whether to include that in the hypothetical to the vocational expert, and he did not address it. Plaintiff cites a number of district court cases ordering remand based on the failure to do that, but the treating physician opinions at issue in those cases were generally much more focused than they are in this case, so that the estimate of time out of work was, at least arguably, not based on speculation.[2]

16. Moreover, where an ALJ rejects treating physician opinions as soundly as the ALJ did here, it would make little sense to remand the case; the ALJ would surely find Drs.

---

[2] A number of plaintiff's citations for this point are only to public dockets and not to any computer database or published reporter. I have not tracked those down because judges "are not like pigs, hunting for truffles buried in briefs" or the record. United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991). In addition, at least one of the cases plaintiff cites was a treating physician rule case. Ruiz v. Comm'r of Soc. Sec., No. 18-cv-9659, 2020 WL 728814 (S.D.N.Y. Feb. 13, 2020). (Indeed, although plaintiff acknowledges that the instant case is not a treating physician rule case, her brief is generally written as if it is.) I also find district court citations in Social Security review cases to be generally unhelpful, as the cases are so fact-specific that persuasive analogues are rare.

Schwalbenberg and Vando's guess about how much time plaintiff would miss work to be too speculative to warrant inclusion in the hypothetical. Finally, I note that in the post-treating physician era in which we now review these cases, an ALJ does not have to comment on every piece of evidence offered by a claimant. The regulations make it clear that "[w]e are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R § 416.920c(b)(1).

17.     Next, plaintiff contends that the ALJ did not give proper weight to her subjective complaints. Just as with plaintiff's criticism of the ALJ's finding that she has moderate impairments in all mental functioning areas, plaintiff is again ignoring the rather extensive evidence contradicting her statements, all of which was discussed by the ALJ. Let's put aside plaintiff's statement to her social worker, noted above, that the reason she stopped working was to have more time to spend with her children – not because her depression and anxiety made it impossible for her to work. There are also three doctors whose findings contradicted her self-reporting.

18.     Dr. Kerenyi, despite hearing plaintiff's complaints during her consultative examination, found, for example, that her thought processes were coherent and goal-directed with no evidence of paranoia; that she had a normal affect despite feeling nervous; that she had full attention and concentration, recent and remote memory skill, average intellectual functioning, and fair insight and judgment. Dr. Dionne Smith at Montefiore Medical Center found her mentally "stable." Another clinician at Montefiore found her "alert and cooperative [with] normal mood and affect;" and "normal attention span and concentration." Even Dr. Schwalbenberg's treatment notes, when she was not transcribing plaintiff's self-reporting, found

7

her coherent with concrete thinking and mostly within normal limits, although depressed and agitated about her weight.

19. I don't want to leave the impression the record is all one-sided in favor of plaintiff not being impaired. Her subjective complaints were enough to convince the ALJ that she indeed has severe mental impairments, and I can see why he found that. But on this record, once again, I cannot conclude that he improperly considered her subjective complaints. To do so, I would have to rebalance the evidence, which is not the function of district court Social Security review.

20. Finally, plaintiff contends that the ALJ failed to consider the side effects of her medications. At one point, she was taking Lexapro, Zoloft, and Wellbutrin. Plaintiff lists the various side effects that these medications can cause. There's nothing surprising about these – most medications carry with them a long, FDA-mandated list of potential side effects. What is significant, however, is that the record before me shows only one rather ambiguous report of side effects actually manifesting themselves within plaintiff. Plaintiff made that complaint to Dr. Schwalbenberg, who transcribed it as follows:

> PSYCHIATRIST GAVE ME WELLBUTRIN, I FEEL SHAKING HAVING NIGHTMARES.  STILL USES LEZAPRO [sic] AND WELLBUTRIN TOGETHER.  PSYCHIATRIST.  GETS PAINS ON SIDE OF STOMACH.  STOPPED TAKING IT.  HAS A LOT OF SIDE EFFECTS.[3]

Despite the absence of any other treatment notes discussing side effects, Dr. Schwalbenberg's medical source statement noted "[Z]oloft produced constipation and sleepiness." But if that

---

[3] One difficulty with Dr. Schwalbenberg's treatment notes is that they change without warning from the first person to the third person.

8

medication was having such an affect on plaintiff, there is no support for it in the treatment notes.[4]

21.  As to the Lexapro and Wellbutrin (which, taken together, can indeed cause nightmares and shaking), plaintiff told Dr. Schwalbenberg that she stopped taking them. That is consistent with Dr. Vando's medical source statement, in which he stated that plaintiff was only taking Prozac (like Zoloft, an SSRI). Dr. Vando was the medication prescriber, not the psychologist Dr. Schwalbenberg.  So that issue is moot.  And while Dr. Vando's medical source statement listed "fatigue, memory, attention-concentration issues," as prescription side effects, that observation, as noted above, does not appear in any treatment notes.

22.  In any event, the ALJ set forth all of this.  He expressly acknowledged that "[i]n November 2018, she reported medication side effects including shaking and nightmares," but that "[a]dditional treatment notes from 2018 reflect that the claimant's mental impairments are considered 'stable' on Lexapro."  Given the paucity of evidence about prescription side effects, he did not have to do more.

23.  Accordingly, plaintiff's motion for judgment on the pleadings is denied, and the

---

[4] In the argument section of her brief, plaintiff asserts that she testified that her medications cause drowsiness, dizziness, nausea, and headaches.  The citations to that alleged testimony are wrong and there was no such testimony.  In any event, there is no corroboration for any such statements in any provider's treatment notes other the one quoted above.

9

Commissioner's motion for judgment on the pleadings is granted.  The Clerk is directed to enter judgment dismissing the complaint.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       April 21, 2024